FILED
United States Court of Appeals
Tenth Circuit

January 10, 2023

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff - Appellee,<br><br>v.<br><br>$114,700.00 IN UNITED STATES CURRENCY,<br><br>   Defendant.<br><br>------------------------------<br><br>RICHARD SCHWABE,<br><br>   Claimant - Appellant. | Nos. 20-1387 & 21-1301<br>(D.C. No. 1:17-CV-00452-CMA-GPG)<br>(D. Colo.) |

_____

### ORDER AND JUDGMENT[*]
_____

Before **CARSON**, **BRISCOE**, and **ROSSMAN**, Circuit Judges.
_____

The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") provides prevailing parties an award of "attorney fees and other litigation costs reasonably incurred" in forfeiture proceedings. 28 U.S.C. § 2465(b)(1)(A). But district courts maintain discretion to determine which costs attorneys have reasonably incurred. Here, the district court acted within its discretion to reduce a prevailing party's

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

requested award. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's award of attorneys' fees and costs. We do, however, remand to correctly categorize attorneys' travel costs as attorneys' fees.

I.

An informant alerted drug enforcement of a marijuana grow in Silt, Colorado. Officers went to the property to investigate and discovered two illegal marijuana grows—one with 42 plants and one with 175 plants. The smaller grow belonged to Richard Schwabe, whom officers arrested for the cultivation of more than 30 marijuana plants and possession with intent to distribute marijuana.

The officers then acquired a search warrant and lawfully searched the property. They found marijuana, marijuana trimmings, odor-concealing stink bags, a copy of the "Marijuana Grower's Handbook," and innumerable envelopes. Additionally, they found $114,700 in cash—$95,200 in a safe, $14,000 in a lockbox, and $5,500 in a Ziploc bag on a table.

Later, the government filed a complaint for forfeiture in rem arguing that the seized $114,700 constituted proceeds from marijuana sales forfeitable under 21 U.S.C. § 881(a)(6). Schwabe opposed forfeiture, claiming it was income he earned and saved over decades. He also asserted 14 affirmative defenses, nine of which the government moved to strike as legally deficient. In response, Schwabe abandoned six of the challenged defenses, and the district court struck the other three. Schwabe also moved: 1) to dismiss the complaint because the civil forfeiture statute's preponderance-of-the-evidence standard violates due process; 2) to quash two third-

party bank subpoenas; and 3) to suppress the fruits of the officer's search. The district court denied them all.

The case proceeded to trial and Schwabe came away with a partial victory. The jury found that only $21,000 was subject to forfeiture, leaving Schwabe with the remaining $93,700. During the trial, however, the district court admonished Schwabe's counsel numerous times for an overall lack of professionalism.

After trial, Schwabe moved for $520,762.50 in attorneys' fees under 28 U.S.C. § 2465(b)(1)(A). But the district court determined that attorney Edward Burch and his co-counsel, David Michael, exercised unsound billing judgment for themselves along with attorneys Hagin Emison and Sara Zalkin. The district court based this finding on Burch's "relatively modest skillset" and that counsel spent time on "frivolous legal work," excessive time on particular tasks, and grossly excessive time seeking attorneys' fees. To adjust, the court first went motion by motion, removing specific hours. It then reduced Burch's hourly rate from $600.00 to $275.00 along with similar reductions for Schwabe's other attorneys. It then lessened Schwabe's fee award by 18% to account for his partial victory and an additional 7% to remove billing for non-substantive legal work. The district court ultimately awarded Schwabe $133,539.00 in attorneys' fees.

Schwabe also moved for $18,625.66 in costs. But the Clerk of Court analyzed Schwabe's request and determined that only $7,901.48 constituted awardable costs under 28 U.S.C. §§ 1821 and 1920. And after reducing that amount to reflect Schwabe's partial recovery and deducting the costs awarded to the government, the

3

Clerk awarded Schwabe $5,558.58, taxed as costs to the government. The district court affirmed the Clerk's award. Schwabe appeals both the fee award and the cost award. We consolidated his appeals.

## II.

We review an award of attorneys' fees for abuse of discretion. Flitton v. Primary Residential Mortg., Inc., 614 F.3d 1173, 1176 (10th Cir. 2010) (citing Starrett v. Wadley, 876 F.2d 808, 825 (10th Cir. 1989)). But we review any factual findings underlying the fee award for clear error and questions of law related to the fee award de novo. Robinson v. City of Edmond, 160 F.3d 1275, 1280 (10th Cir. 1998). We also apply abuse-of-discretion review to cost awards. In re Williams Sec. Litig — WCG Subclass, 558 F.3d 1144, 1148 (10th Cir. 2009).

## III.

The district court did not abuse its discretion by awarding Schwabe less fees than he requested. But it did wrongly categorize travel expenses as costs rather than attorneys' fees.

### A.

When a claimant "substantially prevails" against the United States in a civil forfeiture proceeding, "the United States shall be liable for . . . reasonable attorney fees and other litigation costs reasonably incurred by the claimant." 28 U.S.C. § 2465(b)(1)(A). To determine a reasonable fee, "a court will . . . first calculate the lodestar—the total number of hours reasonably expended multiplied by a reasonable hourly rate—and then adjust the lodestar upward or downward to account for the

particularities of the suit and its outcome." Zinna v. Congrove, 680 F.3d 1236, 1242 (10th Cir. 2012) (quoting Phelps v. Hamilton, 120 F.3d 1126, 1131 (10th Cir. 1997) (cleaned up)).

But "[i]f the court enters judgment in part for the claimant and in part for the [g]overnment, the court shall reduce the award of costs and attorney fees accordingly." 28 U.S.C. § 2465(b)(2)(D). This partial success "requires more than just determining 'the product of hours reasonably expended on the litigation *as a whole* times a reasonable hourly rate' because such '*may be* an excessive amount.'" Browder v. City of Moab, 427 F.3d 717, 722 (10th Cir. 2005) (quoting Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)). Though "[t]he record ought to assure us that the district court did not 'eyeball' the fee request and cut it down by an arbitrary percentage . . . ." Id. (quoting Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998)).

1.

Here, the district court began by calculating the lodestar. Schwabe's counsel asserted they collectively spent 862.6 hours for this case. But the district court determined that Schwabe's counsel did not exercise proper billing judgment and reduced the award to 627 hours. Schwabe's counsel argues this was error. We disagree.

A district court has broad discretion to determine the number of hours that "in its experience, should have been expended on the specific case, given the maneuverings of each side and the complexity of the facts, law, and litigation." Case

v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1250 (10th Cir. 1998) (citing Ramos v. Lamm, 713 F.2d 546, 554 (10th Cir. 1983)).  Counsel for the party claiming fees bears the burden to prove the hours they expended "by submitting meticulous, contemporaneous time records that reveal, for each lawyer" the amount of time expended and their "specific tasks."  Id. (citing Ramos, 713 F.2d at 553).  A district court may reduce the hours if they are "sloppy and imprecise" or if they are "unnecessary, irrelevant and duplicative."  Id. (first quoting Jane L. v. Bangerter, 61 F.3d 1505, 1510 (10th Cir. 1995); and then quoting Carter v. Sedgwick Cnty., Kan., 36 F.3d 952, 956 (10th Cir. 1994)).

The district court determined that Schwabe's counsel engaged in unnecessary, irrelevant, and duplicative efforts throughout its answer; motion-to-strike response; and motions to quash, dismiss, and suppress.  The district court reduced claimed hours for the answer and motion-to-strike response after it found most of the affirmative defenses rested on a thin legal basis.  It excluded more hours when Schwabe moved to quash third-party bank subpoenas as irrelevant.  The subpoenas, however, were highly relevant, revealing information about Schwabe's income.  The district court then subtracted more hours for the motion to dismiss.  Schwabe's argument hinged on a statement by one Justice on the denial of certiorari—a thin legal foundation.  The district court then trimmed hours from Schwabe's motion to suppress after citing duplicative efforts and the relative simplicity of the facts and legal principles.  We agree with the district court.  Each of Schwabe's submissions

contained unnecessary, irrelevant, or duplicative efforts. Thus, the district court did not abuse its discretion by cutting the total hours.

The district court also denied every hour Schwabe claimed for the motion for attorneys' fees because it found Schwabe's total to be outrageously excessive. "An award of reasonable attorneys' fees may include compensation for work performed in preparing and presenting the fee application." Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1205 (10th Cir. 1986). Of course, "not every hour expended on a fee request is necessarily reasonable or compensable . . . . [t]he same standards employed in evaluating time expended in trial and trial preparation apply, to the extent appropriate in a given case." Id. at 1205. "[T]he general rule is that at least some compensation is generally allowable for work reasonably expended on the fee application . . . although hours not spent representing the client are at best on the borderline of what Congress intended to be compensable." Id. at 1206. But we have suggested that if an attorneys' fee request "is outrageously excessive, the court may respond by awarding no fees at all" to disincentivize future attempts to secure unreasonable compensation. Case, 157 F.3d at 1254 (collecting cases). Schwabe's counsel insists that more than three weeks was necessary because they were, in effect, arguing the merits of a new trial motion. But Schwabe's argument does little to overcome the district court's reasonable conclusion that Schwabe's requested fees bore no reasonable relationship to the services his attorneys rendered. The district court did not abuse its discretion when it concluded that three full work weeks is an

outrageously excessive amount of time to spend on a motion for attorneys' fees and denied Schwabe's fee request accordingly.

Because we find that the district court did not abuse its discretion by trimming hours based on its assessment of specific filings, we affirm the district courts reduction of hours for Schwabe's counsel. Burch's claimed hours are reduced from 763.25 by 205 to 558.25. Michael's hours are reduced from 52 by 19.5 to 32.5. Emison's hours are reduced from 40 by 10 to 30. And Zalkin's hours remain at 6.25. We agree with the district court's total hours reduction from 861.5 by 234.5 to 627 hours.

2.

Next, Schwabe asserts the district court abused its discretion in calculating the reasonable rate of his counsel. He says it disregarded the factors in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).[1] He contends the district court ignored several Johnson factors. But we have explained "that the lodestar determination is primary and that the propriety of such a determination is not automatically called into doubt merely because the trial court did not expressly

---

[1] The Johnson factors are (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, (12) awards in similar cases. See Johnson, 488 F.2d at 717–19; Mkt. Ctr. E. Retail Prop. v. Lurie, 730 F.3d 1239, 1246–47 (10th Cir. 2013).

discuss the Johnson factors." Anchondo v. Anderson, Crenshaw & Assocs., LLC, 616 F.3d 1098, 1104 (10th Cir. 2010). Thus, any failure to consider the Johnson factors is not an abuse of discretion without more. Schwabe's argument fails on that point.

The district court did consider several factors. The district court did "base its hourly rate award on what the evidence shows the market commands for . . . analogous litigation." United Phosphorous, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1234 (10th Cir. 2000) (quoting Case, 157 F.3d at 1255). And the party requesting the fees bears "the burden of showing that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Id. (quoting Ellis v. Univ. of Kan. Med. Ctr., 163 F.3d 1186, 1203 (10th Cir. 1998)).

To determine the proper hourly rate, the district court relied heavily upon the opinion of the government's expert Ms. Nancy Cohen over Schwabe's expert Mr. David Lane. And the district court was within its discretion to do so. Ms. Cohen is well-qualified—a partner at a reputable firm in Denver with 38 years of experience, a member of the Colorado Supreme Court Advisory Counsel, and a member of the Colorado Supreme Court Standing Committee on the Colorado Rules of Professional Conduct. She observed that "Burch's skills at trial were not of a lawyer who had been practicing law for 12 years" and he "prevailed at trial despite his performance." United States v. $114,700.00 in United States Currency, No. 17-CV-00452-CMA-GPG, 2020 WL 5076762, at *6. (D. Colo. Aug. 26, 2020). The lower court agreed

and found that the quantitative results happened for reasons outside of Burch's "relatively modest skillset," not because of it.  Id.

Beyond Burch's skillset, Ms. Cohen opined that local counsel could have handled this case.  And Schwabe's expert agreed.  During this dispute, 30 civil forfeiture cases were pending in the District of Colorado litigated by local counsel.  Schwabe had no reason to fly in counsel from a location with a higher cost of living.  Ms. Cohen also observed that the case was straightforward involving just one asset and one claim.  Lastly, Schwabe's fees expert—who has "tried well over 225 jury trials over 40 years"—charges nearly the same rate that Burch sought in this case.  Id.  But Burch has only 12 years of experience.  Id.  Each fact supports the reasoned lodestar determination of the district court.

We find that the district court acted within its discretion when it reduced the hourly rates of Schwabe's counsel.  Burch's $275.00 reduced hourly rate multiplied by his reduced hours leaves $153,518.75 in fees.  Michael's $450.00 reduced hourly rate multiplied by the reduced hours leaves $14,625.00 in fees.  Emison's $250.00 reduced hourly rate multiplied by the reduced hours leaves $7,500.00 in fees.  And Zalkin's $250.00 hourly rate multiplied by 6.25 hours leaves $1,281.25 in fees.  The total fees after the rate reduction are $177,206.25.

3.

The district court capped its analysis by applying a 25% across-the-board reduction to the remaining fees.  Adhering to § 2465(b)(2)(D), the district court accounted for Schwabe's partial victory by subtracting 18% of the proceeds.  But the

district court also applied a 7% reduction after discovering a pattern of billing for non-legal work. As a general matter, "[i]t is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination." Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 558 (2010). A court, however, need not explain each disallowed hour nor "announce what hours are permitted for each legal task." Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1202 (10th Cir. 1986). Instead, it may apply "[a] general reduction of hours claimed . . . so long as there is sufficient reason for its use." Id. at 1203.

Schwabe, however, contends that the 25% blanket reduction along with the hourly rate reduction is dramatic and inconsistent with case law. To support the claim, Schwabe cites United States v. $28,000.00 in U.S. Currency, 802 F.3d 1100 (9th Cir. 2015), for the proposition that the court must choose either an hour-by-hour analysis or a percentage cut. Schwabe cites nothing from this court imposing such a requirement. And even the Ninth Circuit case—of course, not controlling here—leaves courts with the option of applying a percentage cut. Id. at 1108.

While the district court's compound reductions may have been heavy, nothing reveals them to be an abuse of discretion. This Court's precedent is clear that district courts may adjust the lodestar "downward to account for the particularities of the suit and its outcome." Zinna, 680 F.3d at 1242 (quoting Phelps, 120 F.3d at 1131). The district court reduced Schwabe's counsels' award by 18%—the proportion of the Schwabe's money forfeited to the government as proceeds of drug trafficking. Nothing requires courts to identify and justify each disallowed hour. Mares, 801

11

F.2d at 1202. The district court found that Schwabe's counsels' "time sheets are littered with block billing and paralegal work that should not be charged at the lawyer hourly rates." $114,700.00, 2020 WL 5076762, at *7 (cleaned up). Rather than scour the time sheets for all the instances of non-legal work, the court validly applied a 7% reduction. The 25% fee reduction for partial success and non-legal work was appropriate.

We find no reversible error in the final amount calculated by the district court including the 25% across-the-board reduction. The district court did not abuse its discretion by reducing Burch's fee from $153,518.75 to $115,139.00, Michael's fee from $14,625.00 to $10,968.75, Emison's fee from $7,500.00 to $6,150.00, and Zalkin's fee from $1,562.50 to $1,281.25.

4.

The District Court did, however, err when it determined that travel expenses are costs. Travel expenses are attorneys' fees. See Bee v. Greaves, 910 F.2d 686, 690 (10th Cir. 1990). They may be recovered as such so long as they are reasonable for the local market. Id. As far as Schwabe knew, the travel expenses were still pending before the district court when he filed this appeal. We remand only to consider travel expenses as potential attorneys' fees. Any changes to either the attorneys' fee or costs shall be subject only to this adjustment.

B.

The district court did not abuse its discretion by limiting Schwabe's requested costs.

The district court possesses "broad discretion" in awarding costs. U.S. Indus., Inc. v. Touche Ross & Co., 854 F.2d 1223, 1247 (10th Cir. 1988); see also Callicrate v. Farmland Indus., Inc., 139 F.3d 1336, 1339 (10th Cir. 1998) ("The taxing of costs rests in the sound judicial discretion of the district court."). As a result, we review costs awards only for an abuse of that discretion. See Touche Ross, 854 F.2d at 1245. A district court abuses its discretion where it (1) commits legal error, (2) relies on clearly erroneous factual findings, or (3) where no rational basis exists in the evidence to support its ruling. See Elephant Butte Irrigation Dist. v. U.S. Dep't of the Interior, 538 F.3d 1299, 1301 (10th Cir. 2008) (citing Nova Health Sys. v. Edmondson, 460 F.3d 1295, 1299 (10th Cir. 2006)).

Section 2465(b)(1)(A) allows prevailing parties to claim both "reasonable attorney fees and other litigation costs reasonably incurred" in forfeiture proceedings. Section 1920 catalogues taxable costs such as fees for clerks, marshals, transcripts, printing, witnesses, copies; certain docket fees; and compensation for certain court appointed experts. This list is exhaustive to cost awards unless a statute explicitly provides for more. Rimini St., Inc. v. Oracle USA, Inc., 139 S. Ct. 873, 877 (2019) (holding that "full" did not expand the meaning of "costs" beyond § 1920's cabined list). Section 2465(b)(2)(D) also requires courts to "reduce the award of costs" "[i]f the court enters judgment in part for the claimant and in part for the [g]overnment." Lastly, Rule 54(d)(1) of the Federal Rule of Civil Procedure gives courts discretion to award the government partial costs unless the specific cost-shifting statute "provides otherwise." Marx v. Gen. Revenue Corp., 568 U.S. 371, 377 (2013).

Schwabe requested $18,997.22 in costs. But the district court awarded only $5,558.58. It excluded $9,511.62 of expenses for falling outside § 1920's cost definition. It disallowed another $1,416.13 as transcript duplications and court-reporter fees. It then deducted $167.99 as unallowed witness fees which left $7,901.48. And because Schwabe was only partially victorious, the court had to "reduce the award of costs . . . accordingly." § 2465(b)(2)(D). The court reduced $7,901.48 by 18.3%—the government's achieved forfeiture percentage—resulting in $6,454.72. And because of the partial success, the district court further concluded that the government was entitled to a portion of its costs under Rule 54(d)(1). The court calculated the government's costs at $4,894.30. Because the government only attained a 18.3% victory, the district court awarded the government that percentage of its costs totaling $896.14. This, in effect, further offset Schwabe's award. The district court awarded a final amount of $5,558.58 in costs.

Schwabe contests this cost award on three separate grounds. First, he argues that the district court wrongly limited § 2465(b)(1)(A)'s "other litigation costs" to the taxable costs allowed under § 1920. But this modifier is no different from the modifier "full" in Remini. "[O]ther litigation" also offers no explicit expansion of the types of costs which a prevailing party may collect. So just as the modifier in Remini, § 1920 limits the term to the six enumerated taxable cost categories. The district court made no legal error here. Schwabe's second and third arguments are similar. He believes the government's partial success should allow for neither a reduction of his cost award nor a partial award to the government. Section

2465(b)(2)(D), however, explicitly compels courts to reduce a cost award for partial success. The district court simply followed this legislative mandate.

Reaching a conclusion on the government's partial award—$896.14—is not as obvious, however. Nothing in § 2465 requires a court to offset the government's cost. But the Marx Court established that a court may award costs to any prevailing party under Rule 54(d)(1) unless a cost-shifting statute "provides otherwise." Marx, 568 U.S. at 377. Here, the district court entered judgment to the government for $21,000, so it did not abuse its discretion in concluding that—just like Schwabe—the government is a partially prevailing party. And § 2465 does not prevent a court from awarding proportionate costs.[2] Thus, the district court was within its latitude to offset the government's costs. The district court did not abuse its discretion by awarding $5,558.58 in costs to Schwabe. We therefore affirm the court's reasoning but reiterate that the ultimate cost award will be affected by the recategorization of the travel expenses as attorneys' fees.

## C.

Two pending motions remain. First, Schwabe submitted a motion to file a supplemental appendix on the cost issue. The government does not oppose it. We grant the motion. The other is a motion to supplement the record on appeal. The government opposes this motion. Schwabe should have first asked the district court to supplement the record. Fed. R. App. P. 10(e)(1). But he did not. And we only

---

[2] But the district court would have likewise acted within its discretion had it rejected the government's request for costs.

supplement the record if something "material to either party is omitted from or misstated in the record by error or accident."  Fed. R. App. P. 10(e)(2).  This proposed supplement contains little material information and was not omitted by error or accident.  We deny this motion.

                                                Entered for the Court

                                                Joel M. Carson III
                                                Circuit Judge